IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BERT J. NEDERHISER,  )
                     )
        Plaintiff,   )    Civil Case No. 05-787-KI
                     )
vs.                  )
                     )    *(Amended)*
DERRICK FOXWORTH, an individual,  )   OPINION AND ORDER
ROSIE SIZER, an individual, and THE )
CITY OF PORTLAND, a municipal )
corporation and public employer, )
                     )
        Defendants.  )

    Kevin Keaney
    700 N. E. Multnomah Street, Suite 1155
    Portland, Oregon 97232

        Attorney for Plaintiff

    Leah C. Lively
    Sharon Bolesky
    Lane Powell, P.C.
    601 S.W. Second Avenue, Suite 2100
    Portland, Oregon 97204-3158

        Attorney for Defendant Foxworth

Page 1 - OPINION AND ORDER

      Jenifer M. Johnston
      City Attorney's Office
      1221 S.W. Fourth Avenue, Suite 430
      Portland, Oregon  97204

           Attorney for Defendants Sizer and City of Portland

KING, Judge:

Plaintiff Bert Nederhiser, a police officer for the City of Portland ("City"), brings a Section 1983 claim for First Amendment retaliation against defendants Derrick Foxworth and Rosie Sizer, and alleges the City violated the Oregon Whistleblower Law.

Before the court are the defendants' Motions for Summary Judgment (#59, #66).  For the following reasons, I grant the motions.

## FACTUAL BACKGROUND

The parties agree on the following facts.

The suit arises out of a City-initiated investigation of the way in which plaintiff used his firearm on a crime suspect who was attempting to elude police.  Plaintiff was the only officer present to use deadly force.

There was a criminal investigation immediately after the shooting.

Defendant Rosie Sizer, then-Central Precinct Commander, reviewed the criminal investigation and issued an After Action report on December 13, 2002, in which she concluded that although plaintiff's decision to fire his gun in the crowded hallway of the Hotel Vintage Plaza was legally acceptable, "it was not a good one" because "the risk to other officers posed by Sergeant Nederhiser's lethal fire outweighed the immediate threat presented by" the suspect. Decl. of Leah Lively, Ex. 3 at 3.

Page 2 - OPINION AND ORDER

Pursuant to Sizer's request, the Review Level Committee met in March 2003 and decided an investigation was warranted. Review Level has three assistant chiefs and a commander (Sizer in this case) as voting members. Then-Assistant Chief Foxworth was a member of the Review Level Committee until he became Chief of Police in September 2003. The Committee reviews the Internal Affairs investigation and the Commander's recommendations and makes a recommendation to the Chief of Police regarding whether discipline is appropriate, and if so, what level of discipline the Committee suggests.

The case was forwarded to Internal Affairs in the summer of 2003. Internal Affairs investigated the shooting and made factual findings regarding plaintiff's actions. In December 2003, Sizer reviewed the factual findings of the Internal Affairs investigation and recommended a determination that plaintiff's conduct during the shooting violated the Bureau's Standard of Conduct based on Unsatisfactory Performance and Truthfulness.

The case went back to the Review Level Committee on March 3, 2004. The Committee recommended sustaining the allegations of Unsatisfactory Performance and Truthfulness and suggested termination as the appropriate discipline.

The recommendation went to Chief of Police Derrick Foxworth, who decides what proposed discipline will actually be issued.[1] On June 10, 2004, Foxworth issued plaintiff a memorandum regarding "Proposed Discipline: Discharge," sustaining the allegations of Unsatisfactory Performance and Truthfulness. The June 10, 2004 memorandum recommended termination.

---

[1] The mayor has veto authority.

Page 3 - OPINION AND ORDER

Plaintiff's attorney sent a cover letter to Captain Maciag dated January 13, 2005, attaching a letter from plaintiff, dated January 11, 2005, which described irregularities in the Internal Affairs investigation. More specifically, in the letter plaintiff reported that, based on plaintiff's review of interview transcripts, the Internal Affairs investigators altered or mischaracterized testimony in an effort to justify a decision to discharge plaintiff. Plaintiff alleges this letter is his exercise of free speech and whistleblowing, and is the reason for his demotion.

In the letter, plaintiff requested that the letter be "forwarded through the chain of command to Chief Derrick Foxworth. A copy of this letter is being forwarded to The City Attorney's Office as well." Aff. of Jenifer Johnston, Ex. 3 at 2. "Through the chain of command" means that the letter would not go directly to the Chief.

The Chief of Police does not open his/her own mail. The Chief receives a large volume of correspondence, which is opened and screened by individuals working within the Chief's Office. Just because correspondence is directed to the Chief, does not mean the Chief will ever actually see that piece of correspondence. Plaintiff does not know if Foxworth or Sizer received the letter. He admits he never discussed the letter with Foxworth or Sizer.

On January 21, 2005, plaintiff presented information about the shooting at a mitigation hearing.

On January 31, 2005, Chief Foxworth met with several people, including Sizer, and discussed whether to change plaintiff's discipline after the mitigation. Chief Foxworth decided demotion was appropriate.

On March 31, 2005, plaintiff was informed he would be demoted from sergeant to police officer.

Page 4 - OPINION AND ORDER

**LEGAL STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

Plaintiff alleges two claims: violation of his First Amendment right to free speech and violation of the Oregon Whistleblower Law. He bases his claims on the January 11, 2005 letter he sent to Captain Jim Maciag. Plaintiff's attorney also sent a copy of the letter to the Portland City Attorney's Office and Will Aitcheson, the attorney for the Portland Police Officer's Union.

I.     First Amendment Claim (Against Foxworth and Sizer)

In a First Amendment retaliation claim, the plaintiff must show: (1) the conduct is constitutionally protected; and (2) the protected conduct was a "substantial" or "motivating" factor in the decision to take an adverse action against her. Then, if the defendant can prove by a preponderance of the evidence that it would have taken the same adverse action even in the absence of the protected conduct, the defendant is not liable. Ostad v. Oregon Health Sciences University, 327 F.3d 876, 882 (9th Cir. 2003).

Alternatively, a public employer defendant is not liable if it proves that its "legitimate administrative interests outweigh the employee's interest in freedom of speech." Pool v. VanRheen, 297 F.3d 899, 906 (9th Cir. 2002) (internal quotation omitted).

    A.    <u>Whether the Speech is Constitutionally Protected</u>

To be protected, the speech must address a matter of public concern. Whether speech is protected is a question of law. Nunez v. Davis, 169 F.3d 1222, 1230 (9th Cir. 1999).

> Whether a public employee's speech . . . involves a matter of public concern depends upon the content, form, and context of a given statement, as revealed by the whole record. A public employee's speech . . . deals with a matter of public concern when it can be fairly considered as relating to a matter of political, social, or other concern to the community. Speech that deals with complaints over internal office affairs is not protected when it is not relevant to the public's evaluation of a governmental agency's performance.

Id. at 1226 (internal quotations omitted). If the speech contains information that is both a matter of public concern and information that concerns only a private grievance, the speech can still be entitled to First Amendment protection. Pool v. VanRheen, 297 F.3d at 907.

After reviewing the content, form and context of the January 2005 letter, I find that the contents of the letter cannot be characterized as a matter of public concern. Plaintiff identifies only problems related to the investigation into his conduct, and references no broader purpose. McKinley v. City of Elroy, 705 F.2d 1110, 1114 (9th Cir. 1983) ("individual personnel disputes and grievances" are not of public concern). The purpose of the letter was to disclose "investigative irregularities" plaintiff discovered in "preparing for [his] mitigation" hearing. Johnston Aff., Ex. 3 at 2. The statement that sums up the contents of the letter is plaintiff's summary that "potentially negative testimony was kept, and tremendous amounts of testimony that would have assisted me in my exoneration were deleted." Id. at 4. This is not the kind of

Page 6 - OPINION AND ORDER

speech that is constitutionally protected because it deals solely with matters that affected only plaintiff and how the investigation into his conduct should have proceeded.

The form and context of the speech are also indicative of the personal nature of the speech. Plaintiff did not speak directly to Foxworth or Sizer on these matters, and he made clear that he intended his letter to remain confidential. In fact, plaintiff viewed the contents of the letter to be confidential, and he did not discuss the issue with his friends, his pastor, or the press. See Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir. 1995) ("[T]he employee's motivation and the chosen audience are among the many factors to be considered in light of the public's interest in the subject matter of the speech.").

In sum, given the contents of the letter and the context surrounding its creation, the letter does not constitute a matter of public concern.[2]

B.     Whether Protected Conduct was "Motivating" Factor in Demotion

Even if the speech is protected speech, plaintiff has failed to present sufficient evidence to show that the January 2005 letter was a motivating factor in the decision to demote him. First, plaintiff admits he does not know if either defendant received the letter, and he concedes he never spoke to Sizer or Foxworth about the letter. Foxworth testified at his deposition and in a declaration that he did not know about the letter until after the lawsuit was filed. Linda Metzger, an employee who worked in the office of the Chief of Police, offered a declaration that she

---

[2]I reject defendants' argument that plaintiff's speech was made "pursuant to" his job duties as a police officer, following the language in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006). The proper focus is on the employee's official job duties, not necessarily on the employee's motivations–whether based on perceived job duties or personal gratification. 126 S. Ct. at 1960-61. Plaintiff was a police officer; he did not work for the Internal Affairs Division. Furthermore, simply because plaintiff followed the channels set forth in the police directives for making complaints of this nature does not mean he made the reports "pursuant to" his job duties. Cf. Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006) (plaintiff's internal reports of inappropriate inmate behavior were made "pursuant to" her job duties as a correctional officer).

reviewed Foxworth's files and did not find the letter in the files. Sizer testified in a declaration that she also was not aware of the letter until after the lawsuit was filed.

Plaintiff argues that because he asked that the letter be delivered to Foxworth, a reasonable juror could conclude that it was. However, plaintiff concedes in the concise statement of facts that "through the chain of command" means that the letter would not go directly to the Chief. Furthermore, plaintiff offers no evidence that "through the chain of command" would mean the letter would have been delivered to Sizer, a precinct commander at the time and not working in personnel. Plaintiff does not offer any evidence that the City Attorney's Office was required to forward the letter to either Foxworth or Sizer. In short, plaintiff argues, without proffering any evidence of his own, that a reasonable juror could conclude that because plaintiff directed the letter to be delivered to Foxworth "through the chain of command," it was delivered to both Foxworth and Sizer, and Foxworth and Sizer saw and read the letter to boot.[3] Accordingly, plaintiff relies on speculation and raises no genuine issue of material fact.

Plaintiff also argues that the letter was discussed at the due process hearing. He stated in his declaration, "At the due process hearing on January 21, 2005, there was a reference made to my report, either by the union or the City officials present–which included Foxworth and Sizer." Decl. of Bert Nederhiser ¶ 18.

---

[3]Plaintiff's counsel mentioned at oral argument his belief that notes from a January 31, 2005 meeting about plaintiff's discipline contained evidence of Sizer's and Foxworth's knowledge of the letter. These notes were redacted on the basis that some of the statements were made by counsel, were responses to questions posed by counsel, or involved legal advice. The notes were inadvertently disclosed to plaintiff's counsel by the City. In an abundance of caution, and without changing any earlier rulings, I have reviewed the unredacted version previously provided to the court. I find that while it may be evidence of Sizer's and Foxworth's knowledge of a letter from plaintiff's counsel, it is by no means overwhelming evidence of knowledge of plaintiff's letter, and it certainly is not evidence that Foxworth and Sizer were motivated to demote plaintiff based on his letter.

Page 8 - OPINION AND ORDER

I have read the entire fifty-three page transcript from the hearing and found only a handful of remarks touching on the content of the letter, but not on the existence of the letter itself. First, the union attorney stated, "This is also a case where if you haven't gotten the transcripts of the IA interviews, you're gonna find a variance from...from the summaries. We have gone to the effort of actually transcribing the interviews and will be referring to those." Johnston Aff., Ex. 14 at 3. He mentioned the summaries were at variance with the transcripts later in the hearing. <u>Id.</u> at 46-47. Finally, the union attorney stated, "And then this is the one I always like to look at, we're dealing with a reasonably intelligent person, I think he's more than reasonably intelligent, I've seen how he totally tore apart this investigation word for word." <u>Id.</u> at 46. These statements show only that the union attorney was discussing some of the same issues raised by plaintiff in his letter, and are insufficient to show, either directly or circumstantially, that Foxworth or Sizer had personal knowledge that plaintiff had written a letter complaining about these investigation irregularities.[4]

In sum, the evidence in the record does not reasonably support an inference that Foxworth and Sizer were aware of plaintiff's speech when Sizer voted for plaintiff's demotion and when Foxworth ordered it. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

In addition, defendants point out that the City had issued a proposed discipline of termination on June 10, 2004, long before plaintiff presented his January 2005 letter to City

---

[4]Plaintiff offers no evidence to support his counsel's suggestion at oral argument that not every moment of the hearing was caught on tape.

Page 9 - OPINION AND ORDER

officials, and the final decision of demotion was less serious than the initial decision to terminate plaintiff's employment.

Plaintiff argues that the January 2005 hearing was to discuss proposed termination, and that nothing was final until after the due process hearing. He implies that, but for the letter, he would have received no discipline whatsoever. He claims the basis for the two charges was so undermined by the investigative irregularities he uncovered, that the only reason for his demotion could have been the letter itself.[5]

First, plaintiff has no evidence to support his theory that he would have received no discipline had he kept his mouth closed about investigative irregularities. Indeed, after reviewing the evidence, a reasonable juror could conclude that plaintiff received a demotion rather than termination because some of the investigative irregularities were brought to light by the union attorney during plaintiff's due process hearing. During that hearing, the union attorney spoke with compelling detail about the delays, the inaccurate summaries, the conflicting witness memories, and the fact that the union wrongly allowed the After-Action Report to be shown to officers before the Internal Affairs hearing. Second, the decision to demote was based not only on the results of the investigation but on the admissions plaintiff made during the due process hearing about his failure to take a leadership role. Aff. of Vincent Jarmer, Ex. 2 at 5. Accordingly, plaintiff offers no facts from which a juror could conclude that a "substantial" or "motivating" factor in plaintiff's demotion was plaintiff's January 2005 letter.

---

[5]Plaintiff also states that Sizer contacted him just before issuing the After-Action Report (around November, 2002) and threatened him by saying something along the lines of, "You are not going to escape this time." However, if anything, this is evidence Sizer was motivated to discipline plaintiff well-before plaintiff wrote his letter.

Page 10 - OPINION AND ORDER

II.     Whistleblower Claim (Against the City of Portland)

Plaintiff must prove: (1) that he engaged in statutory protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal connection between the two. See Stanich v. Precision Body and Paint, Inc., 151 Or. App. 446, 457, 950 P.2d 328 (1997). To prove causation, plaintiff must establish that "in the absence of the discriminatory motive, the employee would have been treated differently." Hardie v. Legacy Health Sys., 167 Or. App. 425, 435-6, 6 P.3d 531 (2000), partially superseded by statute on other grounds.

Even assuming that plaintiff's January 2005 letter meets the statutory requirements of ORS 659A.203, for the reasons set forth above plaintiff cannot prove the City demoted him because of his speech.

## CONCLUSION

Based on the foregoing, defendants' Motions for Summary Judgment (#59, 66) are granted.

IT IS SO ORDERED.

Dated this ____21st_____ day of March, 2007.

                                              /s/ Garr M. King
                                             Garr M. King
                                             United States District Judge